James A. Hough and John Wagley, Jr., v. Geo. W. Dickinson, Alonzo H. Williams and Lewis S. Davis.

*Transfer of goods by debtor—Good faith.*

| | |
|---|---|
| 58 | 89 |
| 58 | 428 |
| 63 | 145 |
| .58 | 89 |
| 66 | 499 |
| 58 | 89 |
| 95 | 198 |
| 58 | 89 |
| 110 | 454 |
| 58 | 89 |
| 122 | 114 |
| 58 | 89 |
| s24NW | 809 |
| 129 | s383 |

1. In trespass for the seizure of stock in trade plaintiff can recover for the use of his store for the time he was excluded from it by the officers levying on the goods, and he can therefore show what such use was worth as an item of damages.

2. In an action involving the good faith of a transfer of goods the transferee may properly show what he had been told as to the financial standing of the other party to the transaction, by way of rebutting any presumption that he knew it was bad.

3. Such a knowledge of facts as will put an ordinarily prudent man on inquiry will affect the good faith of one who takes a transfer of goods from an embarrassed dealer. Actual participation in the fraudulent intent of the latter is not necessary to defeat the transfer.

4. The rule of the criminal law that the proof of fraud must be so conclusive as to leave no rational doubt of its existence does not apply in civil cases, where it may be shown by a preponderance of proof, and even by circumstantial evidence.

5. It cannot be said that the transfer of property to pay a debt, if intended to cut off the redress of other creditors, cannot be made a fraudulent act by reason of delay and hindrance to which the others are subjected.

6. Where the good faith of a debtor's transfer of goods is in question the relationship of the parties to the transfer is a fact for the jury even though the transferee is a creditor.

Error to Emmet. (Ramsdell, J.) June 11.—Sept. 29.

Trespass. Defendants bring error. Reversed.

*Pailthorp & George* and *Taggart & Wolcott* for appellants. Every man is held to intend the natural and necessary consequences of his acts, and in cases of fraud this presumption has always been held conclusive: Wait on Fraud. Conv. §§ 7–10, and *Kirby v. Ingersoll* 1 Doug. (Mich.), 478, 493.

*Benj. T. Halstead* and *James J. Brown* for appellee. Possession of property unlawfully taken gives the right to sue for the trespass: Cooley on Torts 445; 1 Hilliard on Torts 493; *Hoffman v. Harrington* 44 Mich. 183; a sale to a bona fide purchaser is not invalidated by the fact that the vendor made it with intent to hinder and defraud creditors: *Spring Lake Iron Co. v. Waters* 50 Mich. 13; the law never presumes fraud; the burden of proof thereof rests upon the creditors whenever they assail a transfer for fraud: Bump on Fraud. Conv. 559; relationship is not a badge of fraud: id. 96.

SHERWOOD, J. The plaintiffs in this case are merchants doing business in Cross Village, in the county of Emmet, and the defendants were the sheriff and two of his deputies in said county, in January, 1882, at the time the grievances complained of are alleged to have been committed. The suit is trespass, brought by the plaintiffs to recover of the defendants the value of a stock of goods levied upon by the sheriff while in the hands of the plaintiffs, upon an attachment issued out of the court against the goods and property of Pier & Wagley, another firm of the same village. Plaintiffs claim that they bought the stock of goods of Pier & Wagley in good faith and for a fair consideration, without any intent on their part or any knowledge of any intent on the part of Pier & Wagley, to hinder, delay or defraud any of the creditors of Pier & Wagley, and that while they were peaceably in the possession of the stock of goods the defendants came and took forcible possession of them, and converted them to their own use. The defendants admit that they took forcible possession of the goods; but assert that they were the goods and stock of Pier & Wagley, and subject to levy under the attachments; that they were not purchased in good faith by Hough & Wagley, or for a fair consideration, but that the plaintiffs took them knowing, or having good reason to believe, that Pier & Wagley were selling for the purpose of hindering, delaying or defrauding their creditors.

Three trials of the case have taken place at the circuit, two resulting in disagreement of the jury, and upon the last

a verdict was obtained for the plaintiff for $2453.23. The defendants bring error. The record contains all the proceedings had upon the last trial.

The first assignment of error relates to testimony offered to prove the value of the use of the store in which the goods were kept, and the plaintiff's business carried on, while the defendants occupied it under their levy. This was part of the damage necessarily sustained by the plaintiffs after their expulsion therefrom. The testimony was properly admitted. For the purpose for which the court admitted the testimony objected to, contained in the second assignment of error, it was competent and no error was committed in overruling the objection thereto. The remaining twenty-three assignments of error all relate to the charge given by the court, or to his refusal to charge as requested. At the request of counsel for the plaintiffs the circuit judge charged the jury as follows:

"(6) Pier & Wagley might as lawfully sell their goods to Hough & Wagley as to any other parties, and if made in good faith, and without intent to defraud the creditors of Pier & Wagley, then the title of Hough & Wagley is perfect, and the jury should find for the plaintiffs.

(7) The law presumes that all persons transact their business honestly and in good faith until the contrary appears from a preponderance of the evidence, and the burden of proving fraud in this case is on the defendants.

(8) All persons are presumed to be innocent of intentional wrong until they are proved guilty, and all persons are presumed to transact their business in good faith and for a lawful purpose until the contrary is shown; and when an act can as well be attributed to an honest intent and purpose as to a corrupt or unlawful one, then the jury are bound to attribute the act to an honest intent and to a lawful purpose.

(9) A fraudulent intent cannot be inferred by the jury without proof, but it must be proved like any other act to the satisfaction of the jury; and unless such fraudulent intent is proved on the part of both Pier & Wagley and Hough & Wagley by a preponderance of evidence, the verdict of the jury should be for the plaintiffs.

(10) The goods being in the possession of Hough & Wagley when the sheriff came with his writ, the title is presumptive in Hough & Wagley, and cannot be overthrown except by satisfactory evidence.

(11) The law will not presume fraud from the relationship of the parties. A sale from a husband to a wife, or from a brother to a brother, when there is an actual change of possession, is presumed to be valid until the contrary appears by a preponderance of evidence.

(12) To establish fraud in this case on the part of Hough & Wagley, it is not enough for the jury to find that Pier & Wagley sold with intent to defraud their creditors, but defendants must also show that Hough & Wagley participated in that fraudulent intent.

(13) The jury are instructed, even if they believe from the evidence that Pier & Wagley sold the property in controversy to Hough & Wagley for the purpose of defrauding, hindering or delaying their creditors, still if the jury further believe from the evidence that Hough & Wagley, at the time of the purchase, had no notice or knowledge of such purpose, then the sale would not be fraudulent or void as to Hough & Wagley by reason of the fraudulent intent of Pier & Wagley, and the verdict should be for the plaintiffs.

(14) If Hough & Wagley purchased in good faith, the payment of $400 debt due from James E. Wagley to John Wagley, Jr., said debt being so applied with the consent of all the parties, and gave to Pier & Wagley, for the difference between the debt, $400, and the price of the goods, $1800, five hundred dollars in cash and their three negotiable promissory notes for $900, making a total of $1800, the price of the goods as alleged, Hough & Wagley got a good title as against creditors of Pier & Wagley, even though Pier & Wagley sold the property with intent to defraud their creditors.

(15) When property goes to pay an honest debt, that use of it is lawful, although it may cut off the redress of all others, and although intended so to do ; and all the qualifications of delay and hindrance in such a case will not make the act fraudulent.

(16) The title of this property in Hough & Wagley is not in any manner impaired or affected, unless it shall appear that Hough & Wagley did not purchase for a valuable consideration, or had previous notice of the fraudulent intent, if any, of Pier & Wagley.

(17) The fact of the relationship of Pier & Wagley and Hough & Wagley is not of itself sufficient to establish fraud or a fraudulent intent on the part of either. And when the evidence is positive that there was no fraudulent intent, the

fact of relationship is of but very little weight, and not suffi-cient to overcome such positive evidence.

(18) It is always competent to show the relationship of the parties to an alleged fraudulent conveyance, but the relation-ship will not warrant the finding of fraud in this case with-out evidence that Hough & Wagley knew that Pier & Wag-ley intended by the sale to hinder, delay and defraud the creditors, if such was their intent.

(19) If the jury find the facts to be that Hough & Wagley paid full value for their goods; that there was an immediate change of possession; that James E. Wagley, of the firm of Pier & Wagley, was indebted to John Wagley, of the firm of Hough & Wagley, in a large sum; that by consent of all the parties said sum was applied on the purchase price of the goods; and that Hough & Wagley are not shown to have been indebted to Clark & Co., or that Hough & Wagley knew of any fraudulent intent on Pier & Wagley's part, if such there was,—these facts are all circumstances to show the transaction a fair one.

(20) There is no fraud in the case unless you find—*first*, that Pier & Wagley sold to Hough & Wagley with intent to defraud their creditors; *second*, that Hough & Wagley had notice of the intent, or had good reason to believe that such was their intent, and purchased with that notice to aid and assist Pier & Wagley in carrying out that purpose. Both of these elements must exist.

(21) That if the jury find, after a full consideration of all the facts in this case, the defendants have not shown by a preponderance of evidence that Pier & Wagley intended to defraud, hinder or delay Clark & Co. in the collection of their debt, and that Hough & Wagley participated in such fraud, then they must find that the defendants have failed to make out their case, and the plaintiffs are entitled to a verdict.

(22) If the jury find for the plaintiffs, their verdict must be for the value of the goods taken and for the use and occu-pation of the building by defendant, with interest at seven per cent. from the date of levy and seizure, such amount to be determined by the jury from the evidence.

(23) Fraud will not be presumed upon slight circumstances. The proof should be so clear and conclusive as to leave no rational doubt of its existence, and the general rule is that fraud is to be fully proven, and is not to be lightly inferred."

To the giving of each of the foregoing requests counsel for defendants excepted. Counsel also excepted to the giving of each of the following charges by the court:

"*First.* The jury are instructed that it is not material whether the parties to this transaction believed they had a right to make the sale and purchase in question or not. The law concerns itself rather with the acts of the parties and their necessary and material result, than with the emotions of their minds. Whenever the effect of a particular transaction with a debtor is to hinder, delay or defraud creditors, the law infers the intent, though there may be no direct evidence of a corrupt or dishonorable motive, but on the contrary an actual honest motive existed. The law interposes and declares that every man is presumed to intend the actual and necessary consequences of his own acts, and the courts must presume the intention to exist when the prohibited consequences must necessarily follow from the act unless the contrary is shown by satisfactory evidence.

*Second.* You will determine whether or not Pier & Wagley in making the sale to Hough & Wagley intended to hinder, delay or defraud their creditors by putting their property in a situation to be out of reach of their creditors. If you should find that they did not sell to Hough & Wagley with the intent or for the purpose of hindering, delaying or defrauding their creditors, then you need not consider the case further than to estimate the damages of the plaintiffs, and your verdict will be for the plaintiffs as instructed in their requests to charge."

The charge as given in the ninth request is not in accordance with the rule as laid down by the courts upon that subject. A fraudulent intent on the part of Pier & Wagley, and *notice or knowledge of such intent on the part of Hough & Wagley*, is sufficient to avoid the sale, *without any proof whatever of actual fraudulent intent* on the part of these latter parties.

It is generally held that knowledge of facts sufficient to put an ordinarily prudent man on inquiry is all that is required, and the charge of the court went too far. Waite on Fraud. Conv. §§ 379–383; *Atwood v. Impson* 20 N. J. Eq. 150; *Green v. Tantum* 19 N. J. Eq. 105; *Jackson v.*

*Mather* 7 Cow. 301; *Prewit v. Wilson* 103 U. S. 22; *Willey v. Snyder* 34 Mich. 60.

The twelfth and twenty-first requests, we think, are subject to the criticism that their tendency was to mislead the jury. Actual participation in the fraudulent intent of Pier & Wagley, if any, was not necessary to make them liable; but if they knew or had notice of such intent on the part of the former, the jury might properly find against them. These requests as given require too much.

In the twenty-third request, as stated in the record, and which was given by the court, the jury was told "the proof of fraud should be so clear and conclusive as to leave no rational doubt of its existence." Such is not the rule in civil cases. It applies only in criminal proceedings. Fraud, like any other fact, may be proved by any facts or circumstances which satisfy the mind by a preponderance of the evidence in any given case of its existence, and many times it is inferred, and properly so, from circumstances, and often can not be proved in any other way. *O'Donnell v. Segar* 25 Mich. 367. Mr. Justice Campbell, in discussing this question in *Watkins v. Wallace* 19 Mich. 77, where the language used by the court was, "the proof must be clear and conclusive," says: "No such rigid rule prevails in any civil case. Common sense teaches every one to be cautious in arriving at conclusions which are prejudicial to character and honesty, but if the testimony produces a rational belief, a civil jury cannot be required to discard it because it is not conclusively established." In these views I fully concur. The charge was erroneous, and it is difficult to say the jury were not misled by it.

The fifteenth request was misleading, and had better have been omitted. It was too general, and referring to the seventeenth request, it will be sufficient to say the jury and not the court were to weigh the fact of relationship of the parties, and give it such effect under the circumstances as they deemed proper.

No other errors are discovered in the record which we

regard as harmful to the defendants; but for those noticed and herein considered

The judgment must be reversed and a new trial granted.

COOLEY, C. J. and CAMPBELL, J. concurred.