# APRIL TERM, 1893.

HELON B. ALLEN v. GEORGE STINGEL AND LEWIS
CORNWELL.

*Fraudulent conveyances—Bona fide purchaser—Consideration.*

95 195
d117 448

95 195
122 114

A third mortgagee, who purchases the mortgaged premises under
an agreement to assume the prior mortgages and to pay the
unpaid taxes on the land, which is worth $2,000 more than
the amount of the three mortgages and said taxes, is not a
*bona fide* purchaser, the purpose of the mortgagor in making
the sale being to defraud his unsecured creditors.

Appeal from Saginaw. (Edget, J.) Argued January 6,
1893. Decided April 7, 1893.

Bill in aid of execution. Complainant appeals. Decree
reversed, and one entered protecting complainant's levy,
subject to the three mortgages and the taxes paid by the
defendant Cornwell. The facts are stated in the opinion.

*L. T. Durand,* for complainant.

*Harris & Hendrick (McKnight, Humphrey & Grant,* of
counsel), for defendants.

GRANT, J. In May, 1890, complainant brought suit in
*assumpsit* against defendant Stingel, and on October 7 fol-
lowing obtained a judgment for $2,059.52. Stingel kept a
meat-market, and at the time suit was commenced was in-
solvent, his indebtedness being about $20,000. He owned

the building where his market was kept, and 8 other lots in East Saginaw, and the fixtures and stock belonging to his market. These constituted his entire property, except some accounts due him, a large share of which was of no value. This real estate was covered by three mortgages,— one for $5,000, at the People's Savings Bank; one to a Mr. Densmore, on which there was then due $6,584.13; and one to defendant Cornwell, to secure him as indorser upon a note for $3,000, given by Stingel to one Clark. His stock and fixtures were also covered by two chattel mortgages to their full value.

June 27, 1890, Stingel and wife conveyed all his real estate by deed to Cornwell, and this deed was recorded July 26 following. The consideration agreed upon was $15,000, but there were some taxes unpaid, and some overdue interest, so that the total amount paid and assumed by Cornwell was $15,387.38. Cornwell paid Stingel no money. Cornwell's was the third mortgage, and he agreed to assume the other two mortgages. He subsequently paid the Densmore mortgage, and took an assignment thereof to himself, indorsed the bank notes, took up the Clark note, and gave his own note therefor. Stingel at the time of the transfer was indebted to Cornwell on open account in about $900, and Cornwell was indorser on another note for $1,000, but these formed no part of the consideration for the deed.

The witnesses differ considerably in their estimates of the value of this real estate. The circuit judge, in his written opinion, found that it was worth, at the time of the transfer, between $17,000 and $18,000, and we adopt his decision in this respect.

Mr. Cornwell testified that on the day the conveyance was made to him he told Stingel that if he desired to re-purchase the market building within a year he might do so by paying the money he (Cornwell) had in it, and

what he might spend upon it in improvements thereafter. Stingel testified that such an offer was made, and on the same day, but that nothing was said about it until after the execution of the conveyance.

Cornwell was fully informed by Stingel of his financial condition, knew that he was insolvent, and that the property conveyed comprised substantially all his available resources. We think also that the evidence fairly justifies the conclusion that Cornwell knew of the debt due from Stingel to complainant.

The bill in this case was filed in aid of the execution issued in the suit at law. The case was heard upon proofs taken in open court, and decree rendered dismissing the bill.

The position of complainant is that this conveyance is void as to creditors for three reasons, viz.:

1. It was made with intent upon the part of Stingel to hinder, delay, and defraud his creditors, and was accepted by Cornwell with knowledge of such intention, or under such circumstances as should have put a prudent man upon inquiry.

2. A secret trust was created for the grantor's benefit, which avoids the conveyance.

3. The conveyance amounts to an assignment with preferences.

The learned circuit judge held that—

"While the testimony would indicate that Stingel was insolvent, and his acts and his conduct would indicate an intention to defeat the complainant's claim, the proof does not warrant the claim that Cornwell, the purchaser, had any such knowledge of the intent of Stingel as to sustain the charge that he participated in any purpose to defraud creditors generally, or this judgment creditor in particular, by taking the conveyance of the property."

If actual knowledge of the intent of Stingel were necessary to give complainant relief, we should readily acquiesce

in this conclusion, but the position of Mr. Cornwell is not that of a creditor taking a conveyance to secure his debt, but he must be regarded, under the circumstances, as a purchaser, and his action must be controlled by the rule applicable to purchasers of the property of insolvent debtors.    Stingel's evident object in making the conveyance was to avoid the payment of his debts, and particularly that of the complainant.    Cornwell certainly knew what the result of that conveyance would be.    His security before was ample.    By the conveyance he obtained no additional security, but only the avoidance of foreclosure proceedings.

The situation, then, is this: Stingel and Cornwell meet to negotiate this transfer; the former with the purpose to defraud his creditors, the latter with ample security for his indorsement, and by the agreement then made obligating himself to pay no more as a consideration than he would have been compelled to pay in order to protect his rights as the third mortgagee.    The conveyance is made for an expressed consideration of at least $2,000 less than the fair value of the property.    We do not think, under these circumstances, that he can be regarded in the light of a *bona fide* purchaser, but that the facts within his knowledge were sufficient to put him upon inquiry, and his failure to do so does not operate to defeat the right of creditors.    *Hough v. Dickinson*, 58 Mich. 94, and authorities there cited; *Bedford v. Penny*, Id. 424.

Complainant, before bringing suit, offered Stingel to take a fourth mortgage in security of his claim, which Stingel refused.    This, if given, could not have affected Cornwell's position as mortgagee otherwise than favorably, because complainant, as fourth mortgagee, would have been compelled to pay this mortgage in order to protect his own.    We think the complainant's levy, by virtue of

his execution, is entitled to protection, but subject to the three mortgages and the taxes which the defendant Cornwell has paid.

It is unnecessary to discuss the other questions raised. The decree will be reversed, with costs of both courts, and decree entered in this Court in accordance with this opinion.

The other Justices concurred.