WILLIAMS *et al.* V. HARRIS, Sheriff, *et al.*

1.  A conveyance made by a husband to his wife cannot be regarded as a general assignment for the benefit of creditors, with preferences, when the record fails to show that the husband was insolvent at the time the conveyance was made, and that the property so transferred did not constitute, substantially, all the grantor's property.

2.  Under the existing policy of our law a wife may deal with her husband, as regards her separate estate, upon the same terms as though that relationship had no existence, subject to the qualification named in Section 2590, Comp. Laws.

3.  A transfer of a considerable portion of property by a debtor, when in failing circumstances, to his wife, immediately after acquiring it, may excite suspicion, and, unexplained, may raise a presumption of fraud. But parties may always come in, and rebut the presumption, by showing the utmost good faith in the transaction.

4.  When the wife is a *bona fide* creditor of the husband, he has the right to secure or pay her as any other creditor; and a conveyance of property made to her for that purpose will not be defeated, even if the husband has a fraudulent intent, unless the wife has knowledge of that fact.

     (Syllabus by the Court.   Opinion filed April 4, 1893.)

Appeal from circuit court, Hughes county. Hon. H. G. FULLER, Judge.

Action by Annie E. Williams and another against George W. Harris, sheriff, and the John Pritzlaff Hardware Company, to restrain a sale of property on execution. Plaintiffs had judgment, and defendants appeal. Affirmed.

*H. E. Dewey,* for appellant.

All papers executed in pursuance of an original design, are in law, deemed to constitute one transaction and are construed together, whether made on same or different days. Bump Fraud. Conv. 363. The transfer being immediate from an insolvent debtor to his wife, is fraudulent. Bump on Fraud. Con. pp. 52 and 57. The transfer being fraudulent as to creditors even though for a valuable consideration, is still void. Beels v. Flynn, 44 N. W. 732; Davids v. Burchards, 10 N. W.

557; Gear v. Schree, 11 N. W. 625; Bump on Fraud. 199; Ferguson v. Hillman, 12 N. W. 389.

*Crawford & De Land*, for respondent.

Our statute allows a debtor to prefer one creditor over another. § 4654 Comp. Laws. A wife may be preferred as a creditor by a failing debtor where her claim is an honest one. De Ford v. Nye, 20 Pac. 481; Wooden v. Wooden, 40 N. W. 460; Stratton v. Bailey, 14 Atl. 739; Hedge v. Glenny, 30 N. W. 818. The fact that the husband has a fraudulent intent will not defeat the title unless the wife knows of such intent. Rockford v. Martin, 39 N. W. 219; Buhl v. Peck, 37 N. W. 876; Cornell v. Gibson, 16 N. E. 130; Deering v. Laurence, 44 N. W. 899.

BENNETT, P. J. On the 5th day of August, 1885, W. B. Williams, the husband of Annie Williams,—one of the plaintiffs,—was the owner of a stock of hardware situated in Pierre, S. D. On that day he traded this stock to one Prentice for an undivided one-third interest in 10 acres of land, an undivided one-third interest in 30 lots in Prentice & Pettigrew's addition to the city of Pierre, and a quarter section of land six miles from the city. On the same day the trade was made, Williams owned another section of land near Pierre, some lots in Harrold, some bills receivable, and some accounts against various persons. Soon after taking the deed from Prentice of the above described property, Williams executed a deed to his wife, Annie E. Williams, one of the plaintiffs,—transferring to her the undivided one-third interest in the lots, and the undivided one-third interest in the 10 acres of land, for an alleged consideration of $1,300, which deeds were duly recorded August 5, 1885. At the time said deed was executed, W. B. Williams was in failing circumstances, and his wife knew he was owing several debts, and that times were dull, but did not know he was insolvent, or any of the particulars in regard to his financial condition. About a year prior to the transfer of the stock of hardware by Williams to Prentice, Williams had a partner

by the name of John Pryce, and they were doing business under the firm name of Williams & Pryce. It is alleged that the firm borrowed money from Mrs. Annie E. Williams, for which the firm gave her its promissory notes. Soon afterwards the firm dissolved, and Williams continued the business in his own name, assuming the firm's debts. It is also alleged that Williams borrowed money from his wife, for which she held his note. On August 5, 1885, it is alleged there was due on their notes the sum of $1,000. On that day Mrs. Williams surrendered up and cancelled their several notes, which were past due, and accepted the deed to the above described property in full payment of them. The appellant, the John Pritzlaff Hardware Company, being a creditor of the firm of Williams & Pryce and Willliam B. Williams, began a suit to recover an ordinary money judgment against them on the 17th day of August, 1885, and attached the property described in the deeds from Williams to his wife, Annie E. Williams. After a hearing upon the merits, said attachments were vacated and set aside on the 19th day of September, 1885, but the above named appellants did not recover judgments on their claims against Williams & Pryce and against said Williams until January 11, 1886; and said judgments were not docketed until the 14th day of January, 1886, on which day executions were issued, and placed in the hands of George W. Harris, sheriff, another of the appellants, who levied said executions on the property conveyed to Mrs. Williams by the deed of August 5, 1885. On the 8th and 13th days of April, 1886, the said Harris, as sheriff, sold said property to the appellants, the Pritzlaff Hardware Company, and delivered to them certificates of sale therefor, which have been recorded. The plaintiff brought this action to cancel these certificates, and annul all the proceedings in relation to the sale of this property by the sheriff. The defendant answers, denying the validity of the sale and deed made by Williams to his wife on the 5th day of August, 1885, and alleges that it was fraudulently and collusively made with intent to hin-

der, delay, and defraud the creditors of W. B. Williams, the husband, and asks that the deed be adjudged null and void, and of no effect.   Upon the hearing, judgment was rendered in the court below, annulling the sale under the execution, and the certificates were set aside and canceled, and the defendant enjoined from asserting any claim to said lands, or interfering with the peaceable enjoyment thereof by the plaintiffs, from which judgment this appeal is taken.

In their argument before this court the appellants contended (1) that the conveyance made by William B. Williams to his wife on the 5th day of August, 1885, should be regarded as a general assignment for the benefit of creditors, but with preferences, which is forbidden by Section 4660 Comp. Laws. We feel very doubtful if, upon this record, appellants are in position to make this contention.   The whole theory of appellants' answer, the theory upon which the case was tried in respect to the defense, was that the deed from Williams to his wife was void because in fraud of creditors, and the relief asked in the answer is that the said deed be declared fraudulent and of no effect, and that the sheriff's certificate of sale under the execution be declared good and operative against this property, and that the sheriff be directed to execute a deed of the same in pursuance of such sale and certificate.   The findings of the trial court, and appellants' exceptions thereto, were made upon the issues thus presented.   The appellants' assignments of error are all upon the same theory, and go to allege error in the trial court in not finding and holding that the deed from Williams to his wife conveyed nothing to her, and that the sheriff's sale did convey it to the defendants as purchasers at such sale.   The contention now made in argument in this court, that such deed from Williams to his wife did convey the title to her, but in trust for the benefit of creditors generally of the grantor, Williams, seems inconsistent with appellants' position in the court below, and we think such question was never presented to, or considered by, that court.

But passing this, and treating the question on its merits, we think the contention is not maintainable. It was not found by the court that, when the deed was made by Williams to his wife, Williams was insolvent, but it is affirmatively found that the property so transferred did not constitute all the grantor's property. This want of finding as to Williams' insolvency at the time, and the affirmative finding that he still had other property besides that so conveyed to his wife, were not excepted to, but acquiesced in, by appellants. Upon such a record, we do not think the conveyance from Williams to his wife could be construed to be an assignment for the benefit of his creditors.

The appellants further contend that the conveyance of the lands and lots made by Williams, the husband, to his wife, was fraudulent, and was made to hinder, delay and defraud creditors and therefore void. "Fraud" is a difficult thing to define. Courts have skillfully avoided giving a precise and satisfactory definition of it, so various are its forms and colors. It is sometimes said to consist of "any kind of artifice employed by one person to deceive another;" conduct that operates prejudicially on the rights of another, or withdraws the property of a debtor from the reach of creditors. McKibbin v. Martin, 64 Pa. St. 356; Shoemaker v. Cake, 83 Va. 5, 1 S. E. Rep. 387. It is to be inferred, or not, according to the special circumstances of every case. It is the judgment of law on facts and intents. Pettibone v. Stevens, 15 Conn. 26; Sturtevant v. Ballard, 9 Johns. 342. Its existence is often a presumption of law from admitted or established facts, irrespective of motive, and too strong to be rebutted. Belford v. Crane, 16 N. J. Eq. 265. Fraud is always a question of fact with reference to the intentions of the grantor. Where there is no fraud there is no infirmity in the deed. Every case depends upon its circumstances, which are to be carefully scrutinized. But the vital question is always the good faith of the transaction. There is no other test. U. S. v. Amistad, 15 Pet. 594; Loyd v. Fulton, 91 U. S. 485;

Humes v. Scruggs, 94 U. S. 22; Knowlton v. Mish, 8 Sawy. 627 17 Fed. Rep. 198. To establish fraud the evidence is almost always circumstantial. From the nature of the case it can rarely be proved otherwise; and if the facts and circumstances surrounding the case, and directly proven, are such as would lead a reasonable man to the conclusion that fraud in fact existed, this is all the proof which the law requires.

The above may be considered the general principles in relation to fraud, as applied to the ordinary transactions of life. The question of dishonesty in this transaction rests solely upon the ground that it was by an insolvent debtor to his wife. Husband and wife have been made, by legislation, independent legal personages in most, if not all of the states; the statutes conferring upon married women the power to hold and convey property much the same as though they were single. This fact has sometimes encouraged husbands to confide to the keeping of their wives property which should have been turned over to the creditors of the husband. A debtor, when threatened with insolvency, naturally reposes confidence in his wife, and there may be instances when she becomes wrongfully possessed of funds and property which the law says, of right, should be diverted to the payment of the husband's debts; but as was said in Patton v. Conn, 114 Pa. St. 183, 6 Atl. Rep. 468, "A wife can become an honest creditor of her husband, and he may pay an honest debt to her, though, as to other creditors, the claims may appear stale and ancient." In many respects a wife may, under the existing policy of the law, deal with her husband, as regards her separate estate, upon the same terms as though the relationship had no existence. Thus, in a recent case in Massachusetts, (Bank v. Tavener, 130 Mass. 407) in which the opinion was rendered by Chief Justice Gray, now one of the justices of the supreme court of the United States, it was decided that where the wife loaned her husband, upon the promise of repayment, money constituting a part of her separate estate, a conveyance of land made by him to her through a

third person, in repayment of such loan, and free from a fraud-
lent design, would be valid against his creditors.   See, also,
Medsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. Rep. 351; Tom-
linson v. Mathews, 98 Ill. 178; Jewett v. Noteware, 30 Hun.
194; French v. Motley, 63 Me. 326; Grabill v. Moyer, 45 Pa.
St. 530; Langford v, Thurlby, 60 Iowa 105, 14 N. W. Rep. 135.
Transactions between husband and wife, to the prejudice of the
husband's creditors, however, are usually scanned closely by
the courts, and the good faith in them must be clearly estab-
lished.   As was observed in the case of Hoxie v. Price, 31 Wis.
86, "on account of the great facilities which the marriage rela-
tion affords for the commission of fraud, these transactions be-
tween husband and wife should be closely examined and scru-
tinized, to see that they are fair and honest, and not mere con-
trivances resorted to for the purpose of placing the husband's
property beyond the reach of creditors." In all such cases the
parties are under the temptation to do themselves more than
justice.   In Post v. Stiger, 29 N. J. Eq. 556, the court says:
"A claim by a wife against the husband, first put in writing
when his liabilities begin to jeopardize his future, should al-
ways be regarded with watchful suspicion, and when attempted
to be asserted against creditors upon the evidence of the par-
ties, alone, uncorroborated by other proof, should be rejected
at once, unless their statments are as full and convincing as to
make the fairness and justice of the claim manifest." Lee v.
Cole, 44 N. J. Eq. 328, 15 Atl. Rep. 531.   A transfer of a con-
siderable portion of property by a debtor, when in failing cir-
cumstances, to his wife, immediately after acquiring it, may
excite suspicion, and, unexplained, may seem a presumption of
fraud.   But parties may always come in and remove all taint
of suspicion, by showing the utmost good faith in the transac-
tion.   In the case at bar the plaintiff has shown in a very clear
and convincing manner that she on several occasions had
loaned her husband various amounts of money to assist him in
carrying on his business, and that these several amounts were

evidenced by his promissory notes, which were unpaid on the day the transfer in question was made. Then he stated to her that he had sold his stock of goods for this property and several tracts of land; that he was unable to pay her the money due her in cash, but he would give her this real estate for the notes she held against him. This she assented to, and the transfer was made. Furthermore, the plaintiff shows that the money loaned to her husband was of her own separate estate— money obtained by her from her father's estate, and money earned by her teaching school—and that none of it came from her husband. The separate property rights of husband and wife, and their independence from each other in business transactions, are carefully defined and established by our statutes. See Sections 2589, 2590, 2593, 2594, 2600, Comp. Laws.

Even the fact that the husband has a fraudulent intent will not defeat the title, unless the wife knows he has such fraudulent intent. In the case of Manufacturing Co. v. Mastin (Iowa) 39 N. W. Rep. 219,—a case clearly in point,—the court said of the wife: "She was a creditor of her husband, and he had the right to secure and pay her, as any other creditor. He conveyed, and she accepted, land in payment for such indebtedness; and it is immaterial if her husband did at the same time sell, substantially, all the property he had, and it is immaterial if it was done hastily, with an apparent design to place the title of the property beyond the reach of the plaintiffs, for the reason that Robert Martin had the right to prefer one creditor to another, and his wife had the right to insist on, and accept, all she was legally entitled to. The value of the land did not exceed the amount of the indebtedness." See, also, Buhl v. Peck, (Mich.) 37 N. W. Rep, 876; Deering v. Lawrence (Iowa) 44 N. W, Rep. 899. In the case at bar the testimony of Mrs. Williams and the testimony of Williams is clear and undisputed that the purpose and intent in making the transfer were for the payment of the money loaned by the wife to the firm of Williams & Pryce and to William B. Williams, the grantor. Under the facts established by the evidence the court below was clearly right in its judgment, and it is affirmed.